UNITED STATES of America, Plaintiff–Appellee,

v.

Eddie L. AYERS, and Gregory R. Ayers, Defendants–Appellants.

Nos. 89–10306, 89–10321.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided Jan. 29, 1991.

As Amended on Denial of Rehearing April 3, 1991.

Janet Sherman, and Victor Sherman (argued), Santa Monica, Cal., for defendant-appellant Eddie Ayers.

Jerrold M. Ladar, and Erik J. Sivesind (argued), San Francisco, Cal., for defendant-appellant Gregory R. Ayers.

Rory K. Little, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ALDISERT [*], ALARCON, and BRUNETTI, Circuit Judges.

ALARCON, Circuit Judge:

Gregory Ayers appeals from his conviction for conspiracy to defraud the United States in the collection of income taxes in violation of 18 U.S.C. § 371. Eddie Ayers appeals from his conviction and sentence for three counts of income tax evasion in violation of 26 U.S.C. § 7201. They were tried jointly before a jury in the district court for the Northern District of California. They raise numerous challenges to their convictions on appeal. The appeals have been consolidated for our review. We affirm.

## PERTINENT FACTS

Gregory Ayers and his father, Eddie Ayers, were indicted in a four-count indictment on April 28, 1988. Gregory and Eddie Ayers (the Ayers) were charged in Count One with conspiring to defraud the United States in the collection of income taxes. Eddie Ayers was charged in Counts Two, Three, and Four with income tax evasion for three separate years. The jury found Gregory Ayers guilty on Count One. Eddie Ayers was convicted on Counts Two, Three, and Four. The jury was unable to reach a verdict on the charge of conspiracy against Eddie Ayers.

The Ayers appeal from numerous rulings made during the proceedings in the district court. They both appeal from (1) the admission of evidence concerning subsequent acts committed by Gregory Ayers, (2) the admission of Gregory Ayers' tax returns, and (3) the district court's refusal to give their proposed instruction regarding the government's duty to produce evidence regarding an alleged Bahamian bank loan.

Eddie Ayers individually appeals from the denial of his motion to suppress evidence obtained from his house during the execution of a search warrant on February 28, 1985, and the consideration of his alleged drug-related activities in the imposition of his sentence.

Gregory Ayers also appeals from the denial of his motion for acquittal based on insufficient evidence, and the denial of his motion for a bill of particulars.

---

[*] Honorable Ruggero J. Aldisert, Senior Circuit Judge, Third Circuit, sitting by designation.

## DISCUSSION

### I. *Admissibility of Evidence of Subsequent Acts*

■ The Ayers contend that evidence regarding Gregory Ayers' subsequent acts of uncharged conduct was inadmissible. The district court's decision to admit evidence of other bad acts is reviewed for abuse of discretion. *United States v. Lewis,* 837 F.2d 415, 418–419 (9th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

Mollie Taylor testified that Gregory Ayers paid her $2500 on two specific occasions to take a suitbag to Florida. Gregory Ayers told her to contact a man in Miami and give him the suitbag. Taylor looked inside the bag on the first trip and saw money in different denominations. On each occasion, Taylor contacted the man when she arrived in Miami. He came to the airport and took the suitbag. Later he returned the suitbag to her. Taylor returned the suitbag to Gregory Ayers when she returned to California.

Taylor could not recall the specific dates when she made these trips to Miami. She testified that she agreed to make the trips in order to alleviate the financial problems she had encountered in making her house payments. When asked what year she encountered these financial difficulties, Taylor initially stated, "I don't know if it was in '85 or '86...." Later Taylor testified, "say it was '85." The indictment charged that the alleged conspiracy lasted "through in or about March, 1985...."

The district court denied Gregory Ayers' objection to the admission of evidence that on February 1, 1987, Gregory Ayers submitted a false customs declaration alleging that he was carrying less than $10,000 in cash on his return trip from Nassau, Bahamas. Upon a search of Gregory's bags, a customs officer discovered $10,370.[1]

Evidence of each of these subsequent acts was admitted pursuant to Rule 404(b) of the Federal Rules of Evidence for the limited purpose of proving Gregory Ayers' intent. The jury was instructed that the evidence could be considered "only to prove defendant Gregory Ayers acted with the necessary intent and not through accident or mistake."

We must first consider whether this evidence was relevant to any issue at trial, and therefore properly admitted under Rule 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ We have construed Rule 404(b) as being "a rule of inclusion." *Heath v. Cast,*

---

**1.** It is not totally clear from the record whether this issue was preserved for appeal. At a later point in the proceedings, the Ayers stipulated that the jury would be told the following:

> 1. That on February 1, 1987, at Nassau airport, Nassau, Bahamas, Gregory R. Ayers passed through the United States Customs Service preclearance station prior to boarding an airplane for a flight from Nassau, Bahamas to Richmond, California.
> 2. U.S. Customs Inspector Dale Liikala asked Gregory Ayers if he had over $10,000 in cash or negotiable instruments and Gregory Ayers replied "No."
> 3. Inspector Liikala inspected U.S. Customs Declaration Form 6059B which Gregory Ayers presented him. Mr. Ayers had checked the block indicating that he was not carrying currency or monetary instruments over $10,000 in U.S. or foreign equivalent.
> 4. Inspector Liikala searched the briefcase Gregory Ayers was carrying and discovered $10,370 in U.S. currency. Inspector Liikala noted the undeclared currency on Ayers' customs declaration. No criminal charges were brought and the money was returned to Mr. Ayers.

The government does not contend that by stipulating to the facts relating to the customs violation, Gregory Ayers waived his earlier objection. We have resolved our doubts on the question whether this issue was waived by assuming that defense counsel's willingness to stipulate to these facts was a form of damage control to lessen the impact of evidence he believed to be inadmissible.

813 F.2d 254, 259 (9th Cir.), *cert. denied,* 484 U.S. 849, 108 S.Ct. 147, 98 L.Ed.2d 103 (1987). Evidence of other crimes or acts is admissible under Rule 404(b), " 'except where it tends to prove *only* criminal disposition.' " *United States v. Sangrey,* 586 F.2d 1312, 1314 (9th Cir.1978) (quoting *United States v. Rocha,* 553 F.2d 615, 616 (9th Cir.1977)). We apply the following four-part test to determine whether evidence was properly admitted under Rule 404(b): (1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged. *United States v. Spillone,* 879 F.2d 514, 518–520 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). We are persuaded by our review of the record that the district court did not abuse its discretion in admitting evidence of subsequent acts to prove Gregory Ayers' intent.

■ The evidence was sufficient to prove that Gregory Ayers committed the subsequent acts. Taylor testified that Gregory Ayers gave her a suitbag containing money before her trips to Miami. She returned the suitbag to him after each trip. She further testified that Gregory Ayers paid her $2500 for each trip.

■ Evidence of Gregory Ayers' subsequent acts was introduced to prove a material issue in this matter. To prove a conspiracy, the government must show that the defendant possessed the requisite intent to commit the underlying substantive crime. *United States v. Indelicato,* 800 F.2d 1482, 1483 (9th Cir.1986). Thus, the government was required to prove that Gregory Ayers had the intent to defraud the United States by concealing income to evade the payment of taxes.

■ The Ayers argue that subsequent acts are not admissible to prove a defendant's state of mind during the commission of a prior offense. They rely on *United States v. Hodges,* 770 F.2d 1475 (9th Cir.

1985), for this proposition. In *Hodges,* we held that the district court committed reversible error in admitting evidence regarding an alleged act of extortion which occurred five months after the conspiracy ended. *Id.* at 1478. We did not reach this conclusion based solely on an application of Rule 404(b). Instead, we stated that "[b]ecause we are of the firm conviction that the testimony relating to Hodges' extortion attempt is both of slight probative value and highly and unfairly prejudicial, we conclude that it should have been excluded." *Id.* at 1480. Here, Gregory's subsequent acts of concealing large amounts of cash are highly probative of an intent to defraud the United States in the collection of income taxes.

We have previously held that "acts both prior and subsequent to the indictment period may be probative of the defendant's state of mind." *United States v. Voorhies,* 658 F.2d 710, 715 (9th Cir.1981). While most of the cases addressing other acts evidence, admitted pursuant to Rule 404(b), involve prior crimes or acts of misconduct, it is clear that evidence of subsequent crimes or acts of misconduct is admissible if it is relevant to an issue at trial. *See, e.g., United States v. Mehrmanesh,* 689 F.2d 822 (9th Cir.1982) (evidence that defendant continued to sell drugs after his arrest was admitted to show that he intended something more than the mere personal use of heroin); *United States v. McDonald,* 576 F.2d 1350 (9th Cir.) (when defendant claimed no knowledge of fraudulent activities, testimony that he subsequently participated in other land fraud schemes was admitted to show knowledge and intent), *cert. denied,* 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978); *United States v. Young,* 573 F.2d 1137 (9th Cir. 1978) (testimony regarding defendant's subsequent narcotics transactions admitted in trial for conspiracy to possess cocaine with intent to distribute); *United States v. Hearst,* 563 F.2d 1331 (9th Cir.1977) (evidence of defendant's participation in a crime occurring one month after the crime

charged admitted to prove defendant's intent to rebut the defense of duress), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

■ Gregory Ayers' subsequent acts of concealment were not too remote in time. The alleged conspiracy ended on or about March of 1985. The subsequent acts occurred between late 1985, when Taylor made her first trip to Miami at Gregory Ayers' request, and February 1987, when the violation of the customs laws occurred.

■ Finally, the subsequent acts are similar to Gregory Ayers' conduct during the conspiracy. The evidence presented at trial shows that in furtherance of the conspiracy, Gregory Ayers purchased numerous cashiers checks in amounts less than $10,000. Banks are required to notify the Internal Revenue Service of cash transactions exceeding $10,000. 31 U.S.C. § 5313. Thus, the purchase of cashiers checks in denominations of less than $10,000 can effectively conceal large amounts of cash from the government. Taylor's trips to Miami and Gregory Ayers' false customs declaration are also acts which conceal the ownership of cash from the government. The similarity of this subsequent conduct tends to prove that Gregory Ayers intended to conceal his net worth from the government during the life of the conspiracy.

■ Evidence of Gregory Ayers' subsequent acts to prove intent "may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985) (citing Fed.R.Evid. 403). The Ayers argue that the subsequent acts evidence is unfairly prejudicial. They argue that evidence regarding the transportation of large sums of money to Miami leads to an inference that the money is drug-related. The Ayers were not charged with drug trafficking. They were tried for conspiracy to defraud the United States and for tax evasion. Any possible prejudicial impact of the evidence of subsequent acts

was reduced by the district court's careful exclusion of any reference by Taylor regarding her belief that she transported drugs from Miami for delivery to Gregory Ayers. The risk of prejudice was further limited by the fact that the district court instructed the jury that the evidence was admitted solely to prove intent. We conclude that the probative value of the subsequent act evidence was not substantially outweighed by its possible prejudicial impact. The district court did not abuse its discretion in admitting evidence of subsequent acts to prove intent.

## II. *Gregory Ayers' Income Tax Returns*

The Ayers contend that the district court erred in admitting Gregory Ayers' income tax returns for 1979 through 1985. "A district court's decision to admit or exclude evidence will be upheld on appeal unless the court abused its discretion." *United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984) (citing *United States v. Long,* 706 F.2d 1044, 1053 (9th Cir.1983)), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985).

■ The Ayers contend that since Gregory Ayers was not charged with tax evasion, his tax returns were not in question and should not have been admitted into evidence. The Government argues that Gregory Ayers' tax returns were at issue because the indictment alleged that the Ayers "concealed and continue to conceal the source and nature of *their* income and assets derived therefrom." (emphasis added). The government further argues that Gregory Ayers' tax returns are relevant to show that his income could not support the monetary contributions which Eddie Ayers claimed Gregory Ayers made toward the purchase of certain investments.

Gregory Ayers' income was in question in this case. His income tax returns provided relevant information regarding the source and amount of his income. The district court did not abuse its discretion in admitting Gregory Ayers' income-tax returns into evidence.

### III. *Jury Instruction*

The Ayers contend that the district court erred in failing to give their proposed jury instruction regarding the Bahamian banking laws and the Government's duty to produce evidence of the nature of their transactions with the Nassau, Bahamas branch of the Bank of Montreal. " 'A trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented.' " *United States v. Cruz,* 783 F.2d 1470, 1472 (9th Cir.) (quoting *United States v. Marabelles,* 724 F.2d 1374, 1382–83 (9th Cir.1984)), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 987 (1986). The standard of review for determining whether a district court erred in refusing to give a proposed jury instruction is unclear in this circuit. *United States v. Slaughter,* 891 F.2d 691, 699 (9th Cir.1989). The panel on *United States v. Busby,* 780 F.2d 804, 806 (9th Cir.1986), relied upon the abuse of discretion standard. In *United States v. Anguiano,* 873 F.2d 1314, 1317 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989), the panel applied a *de novo* standard. Since the instructions given by the court adequately covered the Government's duty, the district court did not err in refusing to give the Ayers' proposed instruction under either standard of review.

The Government relied on the net worth theory in prosecuting Eddie Ayers for tax evasion. The United States Supreme Court defined the net worth theory as follows:

In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an "opening net worth" or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income.

*Holland v. United States,* 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150 (1954). When the government relies on a net worth theory of prosecution, it has a duty to "track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence." *Id.* at 135–36, 75 S.Ct. at 135. "When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury." *Id.* at 136, 75 S.Ct. at 135.

The record shows that the government attempted to obtain information regarding the Ayers' transactions with the Bahamian branch of the Bank of Montreal. Internal Revenue Service Special Agent Fletcher testified that he contacted the bank manager of the Bank of Montreal in Nassau, Bahamas. Agent Fletcher was informed that the Ayers had an account with the bank, but not a loan. The bank manager refused to give any more information without written authorization from Eddie Ayers. Agent Fletcher also contacted the San Francisco branch of the Bank of Montreal in an attempt to locate records for the Nassau, Bahamas branch. The Government informed the district court *in camera* of other steps taken through its International Programs Office to obtain information regarding the Ayers' banking transactions in the Bahamas.

The Ayers contend that the government failed to conduct a proper investigation into the nature of the Ayers' transactions with the Bank of Montreal because it failed to follow other available procedures for obtaining evidence from foreign countries. The procedures suggested by the Ayers include application to the district court for a request for foreign judicial assistance, use of a grand jury subpoena duces tecum, using international contacts to obtain the

information, and requiring the defendants to consent to disclosure of the material.

In previous cases, we have not required the government to exhaust all possible means of investigating every lead regarding a taxpayers' nontaxable sources of increased net worth. Rather, we have stated that "[t]he government must investigate and negate a taxpayer's *explanation* only if it is 'reasonable' and 'reasonably susceptible of being checked.'" *United States v. Anderson*, 642 F.2d 281, 285 (9th Cir.1981) (emphasis added) (citing *Holland*, 348 U.S. at 135–136, 75 S.Ct. at 135). In *Anderson* we affirmed a defendant's conviction for income tax evasion even though the government failed to investigate the proffered explanation that his increased net worth came primarily from a $200,000 loan from a Nigerian woman whom he met at a party. We determined that the taxpayer's explanation was neither reasonable nor reasonably susceptible to being checked. *Id.*

In *United States v. Hom Ming Dong*, 436 F.2d 1237 (9th Cir.1971), a taxpayer presented a "cash hoard" defense, claiming that he brought $100,000 in cash from Hong Kong in a seabag just before his discharge from the Navy in 1946. *Id.* at 1239. The taxpayer further explained that he had received $55,000 as an inheritance when his father died in 1938. *Id.* However, he could not remember the name of the man to whom he had entrusted the money during his service in the Navy. *Id.* The government presented evidence that it had checked immigration records regarding the wealth of the defendant's father when he entered this country. *Id.* at 1240. The government also made inquiries of servicemen who were on the ship with the defendant when he allegedly transported the $100,000 in cash from Hong Kong. *Id.* at 1240. We found that "the government did all it reasonably could have been expected to do in checking the leads given by appellant, which were, at best, sketchy. We think this is particularly true in view of appellant's explanation of his increase in net worth." *Id.* at 1242. Referring specifically to the "cash hoard" defense, we further stated:

Although the use of such an explanation does not relax the requirement that the government investigate all leads pertaining to the existence of undeposited cash reserves, it does seem to place at least a minimal burden upon the taxpayer, once he chooses to furnish leads to the government, to aid in the investigation of the purported nontaxable source. As is clear from the earlier discussion, the appellant, who was in the best position to do so, gave little useful information to the government.

*Id.* at 1242–43.

■ A similar situation arises when a taxpayer chooses to create bank accounts or make loan transactions with foreign banks in countries which impose secrecy laws preventing access to information from those banks. The taxpayer is in the best position to give useful information to the government regarding the nature of his financial dealings with the banks in those countries. Under these circumstances, the government met its duty to investigate whether the account in the Nassau branch of the Bank of Montreal was a loan.

■ The jury instruction proposed by the Ayers included the following provisions:

The failure of the government to provide evidence of the banking transactions with the Bank of Montreal, Bahamas, may be viewed by you as a failure of the government to prove certain elements of the counts as I have detailed them to you.

I instruct you that certain procedures are available to the government to seek to obtain the Bahamian bank records and that the government did not undertake to use the procedures. It is the government's burden to seek to use the procedures, whether successful or not. A request of the Bank of Montreal in the United States is *not* one of the procedures that will produce the necessary documents or information. I further instruct you that under a number of circumstances, Bahamian law does not prohibit disclosure of the banking information.

Therefore, when the party who is required to prove the allegations in this case, the United States, does not produce certain evidence, and when it is in their power to produce the evidence, it creates a presumption [or inference] that the missing evidence would be unfavorable to the government.

The court rejected this proposed instruction. Instead, the court instructed the jury on the following portions of the Bahamian secrecy law in banking:

> No person who has acquired information in his capacity as (a) [bank] director, officer, employee or agent ... shall without express or implied consent of the customer concerned, disclose to any person any such information relating to the identity, assets, liabilities, transactions [or] accounts of a customer ... except ... (iii) when a [bank] is lawfully required to make disclosure by any court of competent jurisdiction within the Bahamas or under the provisions of any law of the Bahamas.

Jury Instruction 27.

The jury was also instructed

> [T]he defendant offered to Treasury agents certain explanations of the sources of his funds, which were reasonably susceptible of being checked and verified. You will bear in mind that the Treasury agents may not unreasonably disregard such explanations; and the jury may take into consideration any failure of the Treasury agents reasonably to investigate the truth of such explanations, if any were made, as well as the trustworthiness of the explanations.

Jury Instruction 36.

These instructions fully and accurately informed the jury of the government's duty under the net worth theory of prosecution. The difficulty of obtaining information regarding the alleged loan resulted from the Ayers' choice to do business with banks in the Bahamas, thereby availing themselves of that country's secrecy laws. The government's failure to obtain information after taking reasonable steps to do so, did not preclude the Ayers from establishing at trial that the transaction with the Bahamian bank was indeed a loan. Eddie Ayers testified that he obtained loans from the Bank of Montreal's Nassau branch. The jury did not believe his explanation. The jury instructions given by the court adequately covered the government's duty. The district court did not err in refusing to give the jury instruction proposed by the Ayers.

## IV. *The Search of the Ayers' Residence*

Eddie Ayers contends that the district court erred in denying his motion to suppress evidence seized from his house upon execution of a search warrant on February 28, 1985. Eddie Ayers first asserts that the affidavits supporting the search warrant were insufficient to establish probable cause that his son, Eric Ayers, was engaged in narcotics trafficking. Eddie Ayers also argues that under the facts of this case, the search of the entire house, including rooms which were not occupied by Eric Ayers, was unreasonable. Eddie Ayers maintains further that reversal is compelled because the district court denied his request for an evidentiary hearing.

On February 28, 1985, police officers from the San Pablo Police Department conducted a search of Eddie Ayers' residence located at 3044 Glynis Drive in Richmond, California. The search was conducted pursuant to a search warrant. The affidavits supporting the search warrant alleged that a "confidential reliable informant" had personally observed Eric Ayers selling cocaine from his automobile in North Richmond. The informant gave a description of Eric Ayers and his automobile. The informant also advised the affiant, Detective Buehler, that Eric Ayers lived on Glynis Drive in Richmond.

Detective Buehler checked the San Pablo Police Department records which revealed previous contacts with Eric Ayers. The previous contacts included a traffic citation on February 18, 1985, ten days prior to the execution of the search warrant, and an arrest for possession of cocaine on January 17, 1984. Eric Ayers told the police on each occasion that he resided at 3044 Glynis Drive. Detective Buehler also verified

Eric Ayers' residence address by checking the official records concerning his driver's license and the utilities billing records.

When the police officers arrived at the Glynis Drive residence to execute the search warrant, Mrs. Ella Ayers informed them that Eric Ayers no longer lived there. The police proceeded to search the entire residence. During the search, the officers discovered and seized approximately $469,-925.00 in cash from the closet in Eddie Ayers' bedroom.

### A. Sufficiency of the Affidavit to Establish Probable Cause

Eddie Ayers contends that the search warrant was not supported by probable cause because the only information regarding Eric's alleged narcotics trafficking was provided by a confidential informant whose reliability was not sufficiently established in the underlying affidavit. In support of his argument, Eddie cites a California case, *People v. Mason*, 132 Cal.App.3d 594, 183 Cal.Rptr. 246 (1982). *Mason* holds that the simple recitation that an informer participated in controlled buys is insufficient to establish probable cause. *Id.* at 599, 183 Cal.Rptr. 246. However, *Mason* is not controlling in the case before us. The warrant in *Mason* was reviewed under the two-prong *Aguilar–Spinelli* test. This standard was expressly rejected by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Furthermore, *Mason* is not binding authority in the federal courts. *United States v. Little*, 753 F.2d 1420, 1434 (9th Cir.1984) ("Evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law.*"). Finally, the facts in *Mason* differ significantly from those in the present case.

■ Magistrates and judges must examine the "totality of the circumstances" set forth in the affidavit to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The circum-

stances which a magistrate or judge may consider include an informant's reliability or basis of knowledge. *Id.* However, a deficiency in one of these elements "may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. at 2329. One of the indicia of reliability discussed in *Gates* is the "corroboration of details of an informant's tip by independent police work." *Id.* at 241, 103 S.Ct. at 2334. "The standard of review for the issuance of a search warrant requires us to examine whether the magistrate had a substantial basis for concluding that the affidavit in support of the warrant established probable cause." *United States v. Angulo–Lopez*, 791 F.2d 1394, 1396 (9th Cir.1986) (citing *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir.1984)). "This inquiry is less probing than de novo review and shows deference to the issuing magistrate's determination." *Id.*

■ The "totality of the circumstances" set forth in the supporting affidavit discloses sufficient indicia of reliability of the confidential informant's tip. The affidavit stated that the informant personally observed Eric Ayers participate in the sale of cocaine. The informant knew the substance was cocaine because he had possessed and used it on prior occasions. The affidavit detailed the informant's prior activities in connection with the police, including participating in approximately 15 to 18 controlled buys of contraband under the direction of officers from the Contra Costa County Sheriff's Department and the San Pablo Police Department. The affidavit further stated that the informant had never been known to give any false information to the Contra Costa Sheriff's Narcotics Unit or to the affiant.

Detective Buehler also conducted an independent investigation to verify the identity and address of Eric Ayers. This investigation disclosed that Eric Ayers had previously been arrested for the possession of drugs. Based on the totality of the circumstances set forth in the affidavit, the mag-

istrate had a substantial basis for concluding that the informer's tip was reliable.

Eddie Ayers also contends that the search warrant was not supported by probable cause because the affidavit failed to establish a nexus between Eric Ayers' alleged narcotic sales and the Glynis Drive residence. The key case upon which Eddie Ayers relies is *United States v. Bailey,* 458 F.2d 408 (9th Cir.1972). In *Bailey,* we determined that the denial of a motion to suppress evidence of a bank robbery was erroneous. Travelers' checks stolen from the bank were seized from an automobile in which the two suspects were seen six weeks following the robbery. *Id.* at 411. Clothing worn during the robbery was seized from a house where one of the suspects was arrested. *Id.* We found that the facts recited in the affidavit were insufficient to support the affiant's conclusions that the house and the automobile contained any objects of the search. *Id.* at 412.

Eddie Ayers' reliance on *Bailey* is misplaced. We begin our analysis by noting that *Bailey* involved a robbery suspect instead of a drug dealer. To find probable cause, a magistrate or judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986). In *Bailey,* we concluded that it is not reasonable to seek evidence of a bank robbery which occurred six weeks earlier, at a house where the defendant may be staying only as a social guest. *Bailey,* 458 F.2d at 412. We have also concluded, however, that " '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.' " *United States v. Fannin,* 817 F.2d 1379, 1382 (9th Cir.1987) (quoting *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986)). *See also United States v. Foster,* 711 F.2d 871, 878 (1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

■■ It is also clearly established that "in weighing the evidence supporting a request for a search warrant, a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Fannin,* 817 F.2d at 1382. The affidavit supporting the search warrant set forth facts detailing Detective Buehler's training and experience in narcotics investigations. Detective Buehler alleged that it was his experience that drug traffickers have contraband and other evidence of their crime in their residences. Under the law of this circuit, the affidavit established a sufficient nexus between Eric Ayers' alleged drug trafficking and his place of residence on Glynis Drive. The district court did not err in determining that the totality of the circumstances set forth in Detective Buehler's affidavit established a substantial basis for concluding that probable cause existed for the issuance of a search warrant.

### B. Execution of the Warrant

Eddie Ayers also contends that the officers acted unreasonably and in bad faith in executing the search warrant. He asserts that the affidavit submitted by Ted Cassman in support of the motion to suppress establishes that the police confirmed Mrs. Ayers' statement that Eric no longer lived at the Glynis Drive residence *before* they conducted the search. He argues that once the officers had established Mrs. Ayers' statement that Eric Ayers no longer lived at the residence, they had no right to execute the warrant. "[T]he lawfulness of a search presents a mixed question of law and fact that is reviewed *de novo.*" *United States v. Limatoc,* 807 F.2d 792, 794 (9th Cir.1987).

■■ The record demonstrates that the officers had a right to execute the warrant, notwithstanding Mrs. Ayers' assertion that Eric Ayers no longer lived there. The information disclosed by the police investigation gave them a reasonable basis for discrediting Mrs. Ayers' statement. Eric Ayers had given the Glynis Drive address as his current residence when he received a traffic citation just ten days prior to the execution of the warrant. Eric Ayers had also given that address as his residence on other records in the police files. Detective

Buehler independently confirmed the address by checking the official records concerning Eric Ayers' drivers license. In addition, Detective Buehler observed Eric Ayers' automobile parked in front of the Glynis Drive address at 7:15 a.m. on the morning that the search warrant was executed. It was reasonable for the officers to infer from these facts that Eric Ayers still resided at 3044 Glynis Drive. The officers had no duty to accept Mrs. Ayers' statements as truthful in light of the facts known to them prior to their search.

Eddie Ayers argues that if the police did have a right to search, they exceeded the scope of the search warrant by searching the entire house, including his bedroom over which Eric clearly did not have common control. "Whether police exceed the scope of a warrant in their search is reviewed de novo." *United States v. McLaughlin,* 851 F.2d 283, 286 (9th Cir. 1988).

■ The police did not exceed the scope of the warrant by extending their search to Eddie Ayers' bedroom. The warrant authorized the search for narcotics throughout the entire single family residence located at 3044 Glynis Drive.

Eddie Ayers' has directed our attention to cases involving multi-tenant buildings to support his argument that the search should not have included Eddie Ayers' bedroom. The principal case upon which Eddie Ayers relies is *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In *Garrison,* the police officers obtained a search warrant for the entire third floor of a building, not knowing that there were actually two separate apartments on the third floor. In determining whether a search of the wrong apartment was valid, the Supreme Court applied the following standard: "[T]he validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88, 107 S.Ct. at 1018.

■ A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence. *See* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.5(b) at 219–20 (2nd ed. 1987) and the cases cited therein. In *People v. Gorg,* 157 Cal.App.2d 515, 321 P.2d 143 (1958), the California Court of Appeal considered facts similar to those before us. The California court held that a search of an entire apartment shared by three persons, including their separate bedrooms, was proper pursuant to a warrant naming only one of the tenants. *Id.* at 522–23, 321 P.2d 143. The bedroom of each tenant opened onto the common areas and was not locked. *Id.* at 523, 321 P.2d 143. The court found the apartment to be "one distinct living unit occupied by three persons" instead of "distinct living quarters occupied by different persons." *Id.* *See also Hemler v. Superior Court,* 44 Cal.App.3d 430, 118 Cal.Rptr. 564 (1975) (search of bedroom of person not named in the search warrant appropriate where bedroom opened onto common hallway and was not locked).

As previously discussed, a drug dealer's narcotics and related paraphernalia is likely to be found in his residence. *Fannin,* 817 F.2d at 1382. Furthermore, such contraband can be hidden in any portion of the residence. The most obvious place for the police to search would be the drug dealer's bedroom. Therefore, any other portion of the house would be a more secure hiding place. Thus, the search of the entire premises located at 3044 Glynis Drive was not overbroad or unreasonable. *See United States v. Alexander,* 761 F.2d 1294, 1301 (9th Cir.1985) ("[A] warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect.").

■ Eddie Ayers also claims that his request for an evidentiary hearing to determine precisely what the police knew before

they proceeded with their full-scale search should have been granted. Whether to hold an evidentiary hearing on a motion to suppress is reviewed for abuse of discretion. *United States v. Walczak,* 783 F.2d 852, 857 (9th Cir.1986). "An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *Id.*

 In support of his motion to suppress, Eddie Ayers submitted the declaration of Ted Cassman. Ted Cassman was one of the attorneys of record for Gregory and Eddie Ayers. Ted Cassman declared:

> Upon entering the premises 3044 Glynis Drive on February 28, 1985, the San Pablo Police officers were confronted by Ella Ayers, the wife of defendant EDDIE AYERS and the mother of defendant GREGORY AYERS. Mrs. Ayers was given a copy of the search affidavit, and then informed the officers that her son, Eric Ayers, no longer lived at 3044 Glynis Drive. Instead, she told the officers Eric Ayers now lived on 18th Street in Richmond, near Roosevelt. Soon thereafter, the officers confirmed that Mrs. Ayers' information was correct. Nevertheless, the officers continued to search the entire residence.

Eddie Ayers argues that the allegations contained in Cassman's declaration compelled the district court to conduct an evidentiary hearing concerning the lawfulness of the conduct of the officers in executing the warrant following Mrs. Ayers statement that Eric Ayers did not live there any longer. We disagree. The Cassman declaration contains only the conclusions and hearsay statements of a non-percipient witness. The district court was not apprised of the name of any percipient witness who would testify that the accuracy of Mrs. Ayers' report was confirmed *before* the search. Under these circumstances, the district court did not abuse its discretion in denying an evidentiary hearing.

## V. *Validity of Eddie Ayers' Sentence*

 Eddie Ayers contends that the district court improperly considered statements in the presentence report that he was involved in drug trafficking. He argues that he challenged the accuracy of this information but that the district court failed to make a factual finding regarding the disputed report as required by Rule 32 of the Federal Rules of Criminal Procedure. Consideration of evidence outside the record of conviction for sentencing purposes is reviewed for an abuse of discretion. *FTC v. American National Cellular,* 868 F.2d 315, 322 (9th Cir.1989). Reliance on materially false or unreliable information is an abuse of discretion. *Id.* If the court did not rely on the inaccurate information, the sentence will be affirmed. *Oxborrow v. Eikenberry,* 877 F.2d 1395, 1400 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989).

 Review of the entire transcript from Eddie Ayers' sentencing hearing reveals that the district court did not consider any of the presentence report's references to drugs in imposing Eddie's sentence. In fact, the court reassured Eddie's counsel by saying "certainly no portion of the prosecution version [of the presentence report] is going to be taken into account in terms of the sentence I will be imposing today...." Counsel for Eddie Ayers responded "I think that that's—that's very good, your Honor."

The district court's statement that it would not consider the prosecution version of the presentence report satisfied the substantive requirements of Rule 32. The court also ordered redaction and correction of the presentence report to reflect the orders of the court made at the sentencing hearing. The redaction order invited objections to the corrected reports to be filed within five days of receipt by the parties. The record does not reflect any objection by Eddie Ayers or his defense counsel.

Eddie Ayers argues, however, that even though the court indicated that it would not consider the prosecution's version of the presentence report, references to drug involvement were also presented in other

portions of the presentence report which the court did consider. The entire issue of drug trafficking was discussed at the sentencing hearing. Eddie's counsel urged the court "to treat this as a tax case, and not to treat it as something different." The court responded to this request by saying, "No, it's a tax case. That's what's before me." The record demonstrates that the district court did not rely on the information which Eddie Ayers claims was inaccurate and improper.

### VI. *Sufficiency of Evidence to Convict Gregory Ayers of Conspiracy*

▆▆ Gregory Ayers contends that his conviction for conspiracy to defraud the United States in the collection of income taxes must be reversed because there was insufficient evidence that he conspired with any other person.

"To prove a conspiracy, the government must show (1) an agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the conspiracy." *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). "Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one." *United States v. Krasovich,* 819 F.2d 253, 255 (9th Cir.1987). However, we do not require that an agreement be proven by direct evidence, but instead we have stated that "[i]t is well established that a conspiracy may be proved by circumstantial evidence and that to 'constitute an unlawful conspiracy no formal agreement is necessary'.... An agreement constituting a conspiracy may be inferred from acts of the parties." *United States v. Camacho,* 528 F.2d 464, 469 (9th Cir.) (citations omitted), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).

To determine whether the evidence was sufficient to support a criminal conviction, the proper inquiry is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reason-able doubt.' " *United States v. Adler,* 879 F.2d 491, 495 (9th Cir.1988) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). The evidence should be viewed in the light most favorable to the government. *United States v. Feldman,* 853 F.2d 648, 654 (9th Cir.1988), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989).

▆▆ Eddie and Gregory Ayers were charged in Count One with conspiracy "with other persons known and unknown" to defraud the United States in the collection of revenue in violation of 18 U.S.C. § 371. The district court instructed the jury as follows:

In order to find any defendant guilty, you must all agree unanimously that the government has proven beyond a reasonable doubt that both defendants agreed to the same one of the foregoing; further you must all unanimously agree that the government has proved beyond a reasonable doubt that the defendants agreed to the same means or method....

Evidence of numerous cash transactions involving Eddie and Gregory Ayers was presented at trial. Cashiers checks purchased by Gregory Ayers and others in amounts less than $10,000 were admitted into evidence. Some of these checks were used to make up an $84,900 downpayment on a property purchased by Eddie, Gregory and Ella Ayers. Gregory Ayers purchased three of these cashiers checks for $9,000 each on January 20, 1983. Eddie Ayers purchased two of these cashiers checks for the same amount also on January 20, 1983. One of Gregory's checks was purchased from the same bank as one of Eddie's checks, and they were sequentially numbered. Other cashiers checks in denominations of less than $10,000 were used by Eddie Ayers to purchase a bar.

Other evidence showed that Gregory and Eddie Ayers formed a Bahamian corporation, Gregg Investments, Ltd. A copy of a cashiers check to the Bank of Montreal for $235,000 was presented as evidence. Rita Ayers, Gregory Ayers' sister, testified that she purchased numerous cashiers checks for amounts less than $10,000 for her fa-

ther's use. At least one of these checks was made payable to Gregg Investments, Ltd. Gary Noble, a friend of Gregory Ayers, testified that he purchased a cashiers check for $9,000 at Gregory Ayers' request. That check was payable to Gregg Investments, Ltd. Other members of the Ayers family testified that they gave money to their father, Eddie Ayers, to invest for them. Eddie and Gregory Ayers' tax returns were presented as evidence to show that the reported income did not support the extent of these cash transactions. Based on the evidence of these cash transactions, a rational jury could infer that Gregory Ayers was involved in a conspiracy to conceal the source and nature of his and Eddie Ayers' income from the United States government in order to defraud the government in the collection of revenue.

■ Gregory Ayers contends that since the jury found him guilty of conspiracy, but failed to reach a unanimous verdict as to Eddie on the same charge, the jury did not follow the jury instruction given by the court. Gregory Ayers argues that the jury's inability to reach a unanimous verdict on the issue of Eddie Ayers' guilt for conspiracy demonstrates that there was insufficient evidence of an agreement to defraud the government.

This case does not involve inconsistent verdicts. "But in any event, it is not required that verdicts be consistent even when a conviction is rationally incompatible with an acquittal." *United States v. Brandon*, 633 F.2d 773, 779 (9th Cir.1980). In *United States v. Valles–Valencia*, 823 F.2d 381 (9th Cir.1987), we expressed this principle in the following words:

As the Supreme Court noted in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), however, inconsistent verdicts can just as easily be the result of jury lenity as a determination of the facts. 469 U.S. at 65, 105 S.Ct. at 477. Thus, the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act.

*Id.* at 381–82.

The jury's inability to reach a unanimous verdict could be the result of lenity on the part of one or more jurors rather than a failure to follow the court's instructions or a determination that the evidence was insufficient to establish a conspiracy.

### VII. *Gregory Ayers' Motion for a Bill of Particulars*

■ Gregory Ayers appeals from the denial of his motion for a bill of particulars on Count One of the indictment. The denial of a bill of particulars is reviewed for an abuse of discretion. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.1979), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

Gregory Ayers contends that the language of Count One is vague and failed to give him fair notice of the charges against him. Gregory argues that Count One charged him with impeding the collection of income tax, but failed to indicate *whose* tax. Gregory also asserts that Count One was vague because it "departed from the charging language found in the cases and policy of the United States Department of Justice." Gregory Ayers' Opening Brief at 30. Count One charged Gregory Ayers only with conspiracy to impede, impair, obstruct and defeat the Department of the Treasury in the *collection* of revenue, but not in the ascertainment, evaluation, and assessment of income.

The purposes of a bill of particulars are threefold:

"[T]o inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes."

*United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.) (quoting *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.1976)), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). *See also United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir.1984); *United States v. Buckner*, 610

F.2d 570, 573 (9th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1646, 64 L.Ed.2d 235

 Count One of the indictment specifies five separate means and methods used to carry out the conspiracy. The indictment also details fifteen overt acts committed to further the conspiracy. In addition, the government provided Gregory with a significant amount of discovery. The district court found this sufficient to enable Gregory Ayers to prepare his defense for trial. We agree. Gregory does not claim that he was surprised at trial by evidence produced by the government or that he was prejudiced by any alleged lack of particularity. Furthermore, Gregory's argument that the charging language of the indictment is too vague to allow him to plead double jeopardy in any subsequent proceedings is not persuasive. The indictment is definite enough to enable Gregory Ayers to plead his conviction as a bar to any future proceedings for conspiracy to defraud the government during the same period of time. Review of the indictment and the record does not reveal any abuse of discretion by the district court in denying Gregory's motion for a bill of particulars.

## CONCLUSION

The evidence of Gregory Ayers' subsequent conduct was properly admitted to prove his intent to defraud the government. Gregory Ayers' income tax returns were admitted because they provided relevant information regarding the source and nature of his income. The district court did not err in refusing to use the jury instruction proposed by the Ayers. The instructions given by the court adequately covered the Government's duty to produce evidence.

Eddie Ayers' motion to suppress evidence seized from his home was properly denied. There was probable cause to issue a search warrant for the residence on Glynis Drive and to believe that Eric Ayers lived there on the day the search was conducted. The police did not exceed the scope of the warrant in searching the entire house for hidden contraband. The record does not support Eddie Ayers' contention that the district court improperly considered references that he was involved in drug trafficking when it imposed his sentence for tax evasion.

The evidence was sufficient to convict Gregory Ayers of conspiracy, notwithstanding the fact that the jury was unable to reach a unanimous verdict of guilt against Eddie Ayers on the same charge. Finally, Gregory Ayers' motion for a bill of particulars was properly denied because Count One of the indictment was sufficiently definite.

AFFIRMED.