**Dr. Robert HEATH, Plaintiff-Appellant,**

v.

**Douglas CAST, Robert Hardy, Joseph Brown and Peter Perrin, Defendants-Appellees.**

No. 85–6571.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1986.

Decided March 24, 1987.

Stephen Yagman, Los Angeles, Cal., for plaintiff-appellant.

Thomas J. Feeley, Los Angeles, Cal., for defendants-appellees.

Before ALARCON, REINHARDT and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Appellant Robert Heath brought this civil rights action under 42 U.S.C. § 1983. He claimed that Newport Beach police officers arrested him without probable cause and used excessive force to effect his arrest. Following a jury trial in the district court, judgment was entered in favor of the police officers. On appeal, Heath contends the trial court erred (1) in seating an alternate juror by lot, (2) in failing to give preclusive effect to a prior state court ruling which suppressed evidence, (3) in admitting evidence of prior bad acts, (4) in refusing to admit evidence of the dismissal of state criminal charges pertaining to his arrest, (5) in failing to give requested jury instructions, (6) in giving jury instructions he contends were improper, (7) in not permitting him to recall a medical expert witness who had testified, and (8) in refusing to exclude testimony by another medical expert. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I

### FACTS

Heath and his brother, Larry Heath ("Larry"), were in a bar in Newport Beach, California. A police officer asked Larry for identification. When Larry failed to produce the identification, he was taken out of the bar by the officer. Heath protested the detention of his brother, Larry. An altercation with the police ensued and Heath was arrested. He was charged with interference with a police officer in the discharge of his duties (Cal.Penal Code § 148) and battery upon an officer (Cal.Penal Code § 243). In the subsequent criminal prosecution in state court, Heath moved to suppress any testimony by the police officers concerning the circumstances of his arrest from the time the officers first approached Larry in the bar. His motion was made under California Penal Code section 1538.5. The motion was granted on the ground that in arresting Heath the police officers had acted without probable cause and had violated Heath's fourth amendment rights. After his suppression motion was granted, Heath moved to dis-

miss all of the state charges. The motion was unopposed by the prosecution. The state court granted the motion and the charges were dismissed. Heath then filed this civil rights action.

## II

### ANALYSIS

#### A. *Seating Alternate Juror by Lot*

After the regular jury was impaneled, two alternate jurors were selected. The trial transcript reflects the following with regard to this selection process:

> THE COURT: Now we need to get two alternate jurors. I'm going to suggest that the first name called take the first seat in the second row nearest to this end of the jurybox, and the *second alternate* take the seat right next to the *first one....*

> THE CLERK: Jesusa Basilio. B-a-s-i-l-i-o. First name spelled J-e-s-u-s-a. Again the last name is spelled B-a-s-i-l-i-o.

> THE COURT: Miss Basilio, if you are chosen, you will act as alternate juror. Let's get the *second alternate* first and then we will start the questioning.

> THE CLERK: Sharon Schmitt. S-c-h-m-i-t-t. Sharon Schmitt.... (emphasis added)

The two alternate jurors, Ms. Basilio and Ms. Schmitt, were seated, respectively, where the first and second alternate jurors would sit during trial. Basilio, who had been called first, was excused for cause. Ms. Bolles was then called, seated in the first alternate juror seat vacated by Basilio and questioned as the prospective first alternate. Only after the completion of Bolles' questioning was Schmitt questioned. Following the court's voir dire of the two alternates, the trial judge asked if either party wished to exercise a peremptory challenge. Neither party did, and Bolles and Schmitt were sworn in as the alternate jurors. Bolles remained in the first alternate seat and Schmitt in the second; they occupied these positions throughout the trial.

During the trial one of the regular jurors was excused because of illness. The trial judge proposed selecting one of the alternates to replace the excused juror by placing the nametags of Bolles and Schmitt in a metal box and drawing one out randomly. The following colloquy then occurred:

> MR. YAGMAN: I believe the appropriate procedure is that Alternate Number One is be taken first, that there is not to be a drawing.

> THE COURT: No, there is no Number One or Two. Alternate.

> MR. YAGMAN: They were designated as One and Two, Your Honor. And the rules provide that that happens absent a stipulation. And there has been no signed stipulation.

> THE COURT: I've never worked it that way. Alternates are alternates, and we draw.

> MR. YAGMAN: I think the Federal Rules of Civil Procedure say they have to be taken in the order in which they were *chosen.*

> THE COURT: All right. We are going to do it my way. Do you have any objection?

> MR. FEELEY (defense counsel): No, Your Honor.

> THE COURT: All right. (emphasis added).

In contending that the first alternate should be the replacement juror, Heath's counsel (Mr. Yagman) did not state whether he considered Bolles or Schmitt to be that individual. Over his objection, the court proceeded to draw by lot, and the nametag of Bolles was drawn. Bolles was then seated as a regular juror and the trial continued. Heath argues, as he did in his motion for a new trial, that the procedure followed by the district court in seating Bolles violated Federal Rule of Civil Procedure 47(b), that Schmitt should have replaced the ill juror, and that a new trial is required.

#### *Violation of Rule 47(b)*

▇▇▇ Rule 47(b) provides in relevant part: "Alternate jurors *in the order in which they are called* shall replace jurors who, prior to the time the jury retires to

consider its verdict, become ... unable ... to perform their duties." Fed.R.Civ.P. 47(b) (emphasis added). We review the district court's interpretation of this rule de novo, *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We conclude that the trial court erred in selecting the replacement juror by lot rather than by following the procedure prescribed by Rule 47(b). Schmitt was called ahead of Bolles and she should have been seated as a regular juror ahead of Bolles. The violation of the rule is clear. Use of the lottery system to select jurors is not permitted. *See* Fed.R. Civ.P. 47(b). The more difficult question is whether reversal is required.

Heath argues that the violation of Rule 47(b) was prejudicial. He points out that the Rule entitles each side to only one peremptory challenge when two alternate jurors are to be impaneled. He argues, with some force, that because the first alternate is more likely than the second to end up serving as a regular juror, counsel are more concerned about the first alternate and more likely to exercise their peremptory challenge to excuse a person being considered for that position. Accordingly, Heath says, to exercise Rule 47 rights effectively, a party must know which of two alternate jurors will be the first to replace a regular juror. He says that counsel might use different standards in determining whether to challenge a prospective juror depending on whether that juror is to be the first or second alternate.

In the circumstances of the case before us, the use of a lottery to select one of the two alternates as a replacement juror, while clearly erroneous, was also clearly harmless beyond a reasonable doubt. While a lottery should not have been used in the absence of a stipulation by both

parties, its use here resulted in the selection of Bolles as the replacement juror. Bolles, as we have stated, was questioned first during voir dire and was seated, from the moment she stepped forward, in the chair designated for the first alternate. Moreover, in the initial process by which the alternates were selected, the court referred to Schmitt's status as that of "second alternate." And at the time of the lottery, Heath reminded the court of the earlier designation of the jurors as alternate one and alternate two. In sum, Bolles was treated by the court and by Heath as the *de facto* first alternate and Schmitt was treated as the *de facto* second alternate during the entire trial up to the time of the lottery. Because it was Bolles who ultimately replaced the excused juror, the use of the lottery did not affect Heath's earlier decision not to exercise a peremptory challenge as to either Bolles or Schmitt. It is clear to us, therefore, that the error in seating Bolles as a regular juror did not affect the substantial rights of any party. Fed.R.Civ.P. 61.[1]

"While in a narrow sense Rule 61 applies only to the district courts, *see* Fed.Rule Civ.Proc. 1, it is well settled that the appellate courts should act in accordance with the salutary policy embodied in Rule 61." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984). And as the Supreme Court stated in *McDonough Power*:

" '[A litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials." (citations omitted). Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have resources to provide litigants with perfect

1. Rule 61 provides:
No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or

order, unless refusal to take such action appears to the court inconsistent with substantial justice. *The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.*
Fed.R.Civ.P. 61 (emphasis added).

trials, were they possible, and still keep abreast of its constantly increasing caseload....

We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered " 'citadels of technicality.' " (citations omitted). The harmless-error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.... *Id.* at 553, 104 S.Ct. at 848.

We conclude that in this case the district court did not commit reversible error, notwithstanding the violation of Rule 47(b). In so doing, we do not condone violations of the Rule and note that under different circumstances its violation might require a new trial.

### B. *Issue Preclusion*

The gravamen of Heath's lawsuit is his contention that he was arrested without probable cause and that the police officers used excessive force to effect his arrest. He argues the grant of his motion to suppress evidence under California Penal Code section 1538.5 in his state criminal case precludes the litigation of the issues of probable cause and excessive force in this case. He bases this argument on the doctrine of collateral estoppel.

■ The availability of collateral estoppel is a mixed question of law and fact in which legal issues predominate. We review these issues de novo. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.1985). *See United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). State law governs the doctrine of issue preclusion in federal courts. *Takahashi v. Board of Trustees,* 783 F.2d 848, 850 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). *See also Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (doctrine of collateral estoppel applies to section 1983 cases).

California courts apply a three-step analysis to determine whether collateral estoppel is applicable to a particular issue. First, there must be a final judgment on the merits. Second, the issue decided in the prior adjudication must be identical to the one presented in the action in question. Third, the party against whom collateral estoppel is asserted must have been a party, or in privity with a party, to the prior adjudication. *Bernhard v. Bank of America,* 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942) (citations omitted); *Miller v. Superior Court,* 168 Cal.App.3d 376, 381, 214 Cal.Rptr. 125, 128 (1985).

■ Motions to suppress evidence under California Penal Code section 1538.5 are not considered final judgments under California law for purposes of collateral estoppel. *People v. Gephart,* 93 Cal.App.3d 989, 156 Cal.Rptr. 489 (1979). In *Gephart,* defendants were convicted of armed robbery in Siskiyou County, California, after the superior court in that county refused to suppress evidence which had been ordered suppressed as a result of a section 1538.5 suppression motion made in a prior prosecution of the defendants on different charges in the superior court in Stanislaus County, California. The charges in Stanislaus County were dismissed after the suppression motion was granted. The defendants argued that under principles of *res judicata* and collateral estoppel, the superior court in Siskiyou County was bound by the ruling suppressing evidence which had been made in Stanislaus County. The California Court of Appeal rejected this argument, holding that neither *res judicata* nor collateral estoppel were applicable because the prior ruling on the suppression motion in Stanislaus County made under California Penal Code section 1538.5 could not be considered a final judgment for purposes of either *res judicata* or collateral estoppel. "The determination on a motion under Penal Code section 1538.5 is a preliminary evidentiary determination and is independent of the real question in the proceedings, that of the accused's guilt." *Gephart,* 93 Cal.App.3d at 1000, 156 Cal.Rptr. at 495 (citation omitted). *Compare Miller*

*v. Superior Court,* 168 Cal.App.3d 376, 214 Cal.Rptr. 125 (1985) (city collaterally estopped in civil action from relitigating issue of whether plaintiff was raped by city police officer where officer had been convicted of raping plaintiff in prior criminal case; prior conviction was a final judgment).

Because an order suppressing evidence under California Penal Code section 1538.5 is not a final judgment on the merits, Heath has failed to satisfy the first requirement for the application of the doctrine of collateral estoppel. We need not, therefore, reach the questions of issue identity or privity. The district court properly refused to apply the doctrine of collateral estoppel.

### C. *Prior Bad Acts*

Heath contends the district court erred in admitting evidence of his prior arrest by Newport Beach police officers and evidence of his brother's prior misdemeanor convictions resulting from arrests made by the same police agency. He argues the court improperly admitted this evidence to prove his character in violation of Federal Rule of Evidence 404(b).[2] He further contends that even if the evidence was relevant to show bias against the Newport Beach police officers, the prejudicial effect of the evidence outweighed its probative value and the evidence should have been excluded under Rule 403 of the Federal Rules of Evidence.[3]

We first consider whether the trial court abused its discretion in determining that this evidence of prior bad acts was relevant to the issue of bias of Heath and his brother against the Newport Beach police, and admissible under Rule 404(b). At trial, Heath agreed to stipulate that he and his

brother were biased against the police officers. He argues it was error for the court to admit the evidence for the purpose of showing bias when he was willing to stipulate to the very bias the evidence was offered to show.

■■■ "Rule 404(b) is 'one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition.'" *United States v. Sangrey,* 586 F.2d 1312, 1314 (9th Cir.1978) (*quoting United States v. Rocha,* 553 F.2d 615, 616 (9th Cir.1977)) (emphasis in original). Evidence of Heath's prior arrest, and of his brother's prior misdemeanor convictions, were probative of their bias against the Newport Beach police and of Heath's motive in bringing this action. The jurors, as sole triers of fact and credibility, were entitled to hear the evidence and decide the extent of that bias. A stipulation simply that bias exists precludes the jury from assessing the degree of bias. The trial court did not abuse its discretion in admitting this evidence notwithstanding Heath's proposed stipulation.

■■ We next consider whether the trial court erred in determining under Federal Rule of Evidence 403 that the probative value of the evidence of prior bad acts was not substantially outweighed by the danger of prejudice from the admission of that evidence. It appears from the trial record that the probative value and prejudicial effect of the evidence were adequately weighed by the court before the evidence was admitted. The court also gave the jury a limiting instruction with respect to this evidence.[4]

---

**2.** Rule 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** Rule 403 provides in part:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

**4.** Heath was asked on cross-examination: "Directing your attention now to the date of February 16, 1983 [the prior arrest], on that occasion did a Newport Beach police officer arrest you for being intoxicated in public?" Before Heath could answer, the court interrupted the cross-examination and instructed the jury:
 Any evidence of a February 26, 1983 contact between plaintiff and officers of the Newport Beach Police Department is received and may be considered only for a limited purpose, to show, to the extent it does tend to show, any bias or prejudice of the plaintiff toward the Newport Beach Police Department.

Evidentiary rulings are reviewed for abuse of discretion. *Coursen v. A.H. Robins,* 764 F.2d 1329, 1333 (9th Cir.1985). The district court did not abuse its discretion in admitting the evidence of prior bad acts.

### D. *Evidence of Dismissal of Criminal Charges*

■ Heath contends the district court erred in failing to admit evidence of the state court's dismissal of the criminal charges against him. He argues it was unfair and asymmetrical to admit evidence of his prior arrest, but reject evidence that the criminal charges relating to his more recent arrest which was the subject of the present lawsuit had been dismissed. The trial court considered this argument, weighed the relevant factors, and determined that evidence of dismissal of the criminal charges would be more prejudicial than probative. The criminal charges had been dismissed on Heath's motion, unopposed by the prosecution, following the state court's ruling suppressing testimony by the arresting officers. The dismissal did not establish Heath's innocence nor was it probative of whether the officers acted with probable cause or used excessive force in effecting Heath's arrest. The district court did not abuse its discretion in rejecting this evidence. Fed.R.Evid. 403.

### E. *Jury Instructions*

Heath argues the court erred in refusing to give the following instruction to the jury:

> In short, it is received only insofar as it may tend to reflect on the credibility of plaintiff's testimony and not for any other purpose.
> Specifically, it may not be used to show that the plaintiff acted in any particular way on the date of the incident in question.
> And, further, you should understand that any such evidence is not used to show any character trait of the plaintiff or that he was or was not guilty in fact of the offense for which he was arrested, if he was arrested on another occasion.
> Again, the purposes of the evidence is limited to your consideration of the question of bias, if any, of the plaintiff against the New-

If you should find that a party willfully suppressed evidence in order to prevent its being presented in this trial, you may consider such suppression in determining what inferences to draw from the evidence or facts in the case against him.[5]

He contends the defendants intentionally suppressed initial reports of the defendants' two expert medical witnesses, Doctors Sharma and Petersons, and that the identity of two other witnesses was concealed from him.

■ The record reveals that Heath must have known of the existence of Dr. Sharma's initial report during pretrial discovery because it was referred to in a subsequent report by Dr. Sharma which had been provided to Heath. As to Dr. Petersons' initial report, that was furnished to Heath sufficiently in advance of Dr. Petersons' examination to permit effective cross-examination. Finally, the names of the witnesses Heath claims were concealed were disclosed during trial and the district court recessed the trial to permit Heath to depose them. He did so, and then did not call either of them as a witness. No evidence was suppressed and the court did not err in refusing to give Heath's requested willful suppression of evidence instruction. *See United States v. Wellington,* 754 F.2d 1457, 1463 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985) (trial court has broad discretion in formulating jury instructions and will be reversed only upon a showing of abuse of discretion); *compare 999 v. CIT Corp.,* 776 F.2d 866, 871 (9th Cir.1985) (the claim that a court failed to give the jury a proper jury instruction is a question of law reviewable

port Beach Police Department insofar as it tends to show such.

**5.** This instruction is taken from California's standard BAJI Instruction 2.03. There is no comparable standard instruction for use in civil cases in federal court. *See* E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions,* § 72.19 (3d ed. 1977 & Supp.1986). In California it is prejudicial error to give BAJI 2.03 if there is no showing that evidence has been at least willfully, and perhaps fraudulently, suppressed. *See County of Contra Costa v. Nulty,* 237 Cal.App.2d 593, 47 Cal.Rptr. 109 (1965).

de novo). Under either standard, the district court did not err in refusing to give the requested instruction.

 Heath also contends the district court committed error in failing to give instructions which he requested pertaining to probable cause, use of excessive force, and defining an "arrest." These claims are without merit. A court is not required to instruct the jury in words chosen by a party nor to incorporate every proposition of law a party suggests. It is sufficient if the instructions as given allow the jury to determine intelligently the issues presented. *Los Angeles Memorial Coliseum Commission v. National Football League*, 726 F.2d 1381, 1398 (9th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). Considering the instructions as a whole, the jury was adequately instructed on each element of the case and the instructions given by the trial judge accurately reflect controlling law. *Id.*

 Heath's contention that the district court erred in giving an instruction on the officers' good faith is also without merit. The jist of this argument is that the officers' good faith is relevant only in connection with a defense of qualified immunity and Heath contends that defense is not available in this case. He's wrong in this contention. We have recently held that "[t]he qualified immunity defense is available in cases of unlawful arrest." *Hamblen v. County of Los Angeles*, 803 F.2d 462, 465 (9th Cir.1986) (citations omitted). And in any event only one jury instruction included the words "good faith," and that instruction concerned the issue of punitive damages, not qualified immunity.[6]

**F. The Medical Expert Witnesses**

The defense had two medical expert witnesses: Dr. Sharma, a psychiatrist, and Dr. Petersons, a neurosurgeon. Both of these doctors examined Heath on two separate occasions. Each prepared an initial report and a subsequent report. During the discovery phase of the case, the magistrate ordered all defense medical reports turned over to Heath. The defense turned over the second reports, but did not turn over the initial reports. These initial reports were furnished to Heath's counsel at the time of trial.

**1. Court's Refusal to Recall Dr. Sharma**

 Dr. Sharma testified and was excused. Thereafter, Heath's counsel claimed he learned of the existence of Dr. Sharma's initial medical report only after Sharma had completed his testimony. He requested permission to recall Dr. Sharma so that Sharma could be cross-examined on his initial report. The district court refused to permit Heath to recall Sharma. The court found that Heath's counsel must have been aware of the existence of Sharma's initial report during the discovery phase of the litigation and rejected Heath's claim of surprise. Heath's counsel was then permitted to read into the record, before the jury, a paragraph from Dr. Sharma's report which Heath contended impeached Sharma.

The defense may have disobeyed a discovery order in failing to turn over Sharma's initial report earlier, but the district court did not abuse its discretion in refusing to permit Heath to recall Sharma. Since Heath had adequate notice of the

6. The instruction reads:
The defendants contend that on or about the date and at the time and place alleged, certain defendants did arrest the plaintiff with probable cause to do so and used reasonable force to effect his arrest. But defendants deny that any conduct or act of theirs deprived the plaintiff of any right or privilege or immunity secured to him by the Constitution or laws of the United States and further deny that plaintiff was injured as a result of any unlawful act or conduct by the defendants or that plaintiff was injured or damaged in the amount or sum claimed by him or any other sum or amount. And they also deny that any act or conduct of the defendants toward plaintiff was malicious or wanton or oppressively done. And *in this connection* defendants allege that all of their acts and conduct of which the plaintiff complains were done in good faith in the pursuance of the defendants' lawful authority and lawful duty as a police officer. (emphasis added).

existence of the initial Sharma report during the discovery phase of the litigation, he could have moved to compel its production and neglected to do so. *See Peraza v. Delameter*, 722 F.2d 1455, 1456 (9th Cir. 1984).

### 2. *Court's Refusal to Exclude Dr. Petersons' Testimony*

Heath's counsel was provided with a copy of Dr. Petersons' initial report before Petersons testified. Heath contends, however, that because the defense failed to turn over this report until the time of trial he was "deprived of an opportunity to evaluate the report and to effectively question Petersons because [he] had no opportunity to read, digest, and evaluate that report, and then to consult with appropriate experts to formulate questions for Petersons." The record reflects, however, that Dr. Petersons was present and ready to testify at the trial on Friday, November 8, 1985. When Heath's counsel became aware of the existence of Dr. Petersons' initial report, he moved to exclude Petersons' testimony based upon his claim that failure to provide the report violated the magistrate's discovery order in the case. The district court refused to exclude Dr. Petersons' testimony because to have done so would have been too severe a sanction, even if the discovery order had been violated. The district court then continued the trial to the following Tuesday, November 12th, so that Heath's counsel could review Petersons' initial report and consult with his own expert. Heath's medical expert was scheduled to testify at 9:00 a.m. on November 12th. Dr. Petersons' testimony was rescheduled to 1:30 p.m. on November 12th. Heath's argument that he was denied the opportunity to review Dr. Petersons' initial report and consult with his own medical expert in advance of examining Petersons is without merit. That simply did not occur. The trial court did not abuse its discretion in refusing to exclude Dr. Petersons' testimony.

AFFIRMED.