962 F.2d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nadine SHMYR, Defendant-Appellant.
 No. 91-10138.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1992.
Decided May 8, 1992.
 
 1
 Before CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges, and BURNS*, District Judge.
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Appellant Nadine Shmyr appeals her conviction for conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. sections 812, 841(a)(1), and 846. Shmyr was tried with one of her alleged coconspirators, William Homick. Homick was charged with the same count as Shmyr, as well as two others. This court has jurisdiction over the timely appeal pursuant to 28 U.S.C. section 1291, and we affirm.
 
 STATEMENT OF FACTS
 
 4
 From approximately the summer of 1984[1] until March 1986, Steve and William Homick continuously distributed cocaine in Las Vegas, Nevada, and other points in the United States. Homick was employed by America International Airlines (hereinafter "AIA") in the early 1980s. Fellow employee Edward Kolbe testified that Homick sold him cocaine three or four times. Kolbe testified that at least one time, Homick told Kolbe to pay Shmyr, Homick's sister, who would pass the payment along to Homick. At least once, Homick instructed Kolbe to give some of the cocaine to Shmyr. Kolbe became an FBI informant in October of 1985.
 
 
 5
 Kolbe agreed to assist the investigation by arranging to purchase one half or one ounce of cocaine from Steve Homick, and to have his phone conversations with Homick recorded. Kolbe spoke by phone several times during late October and early November with Homick and Shmyr to negotiate a sale. Only a few were recorded. Finally, the parties reached agreement on the sale. Shmyr would get the cocaine from Homick, give it to Kolbe and collect payment from Kolbe. Homick also told Kolbe to cut the cocaine and give Shmyr something for her assistance.
 
 
 6
 The first recorded conversation between Shmyr and Kolbe was October 29, 1985. From Kolbe's and others' testimony regarding coded drug language, the conversation could quite easily be construed as relating to the sale of the cocaine. Appellant maintains that the entire discussion was about the sale of tools.
 
 
 7
 On November 5, 1985, Kolbe spoke to both Shmyr and Homick. Homick told Kolbe that he had already shipped the cocaine to Shmyr. Homick said he wanted Kolbe to give Shmyr some cocaine or money for her assistance. The deal never went through.
 
 
 8
 On March 16, 1989, Steve Homick, William Homick and Nadine Shmyr, along with eight other individuals were indicted in Nevada. Shmyr was charged with a single count of conspiracy to distribute and to possess with intent to distribute.
 
 
 9
 On April 3, 1989, the government filed an emergency motion to take Siegel's deposition, who was suffering from cancer and dying. The district court granted the motion the next day, and the deposition was set for April 20. On April 18, the district court appointed counsel who could attend the deposition for Shmyr. Shmyr was then arraigned and pleaded not guilty.
 
 
 10
 The deposition began on April 20 and lasted three days. Shmyr waived her presence at the deposition, even though her expenses were to be covered. With respect to Shmyr, Siegel testified that he met her twice in May of 1983. On the first time he met her, Siegel testified that Steve Homick gave her a package of cocaine. Shmyr's counsel cross-examined Siegel and established that Siegel's memory was not great and that Siegel did not like Shmyr. He also established that Siegel only saw Shmyr with cocaine once and that he never saw her distribute it.
 
 
 11
 The other defense attorneys vigorously cross-examined Siegel, discussing his prior convictions, his prior inconsistent statements, his memory problems, his informant history, his payments from the FBI for assistance in this case and others, the leniency he received in exchange for his assistance, and the lies and other frauds he had committed. On September 14, 1990, the jury convicted Shmyr and William Homick.
 
 DISCUSSION
 I. Admissibility of Siegel Deposition Tape
 
 12
 Appellant contends that the Siegel deposition was improperly admitted into evidence. She claims that she was denied the right to cross-examine Siegel effectively at the time the deposition was taken. She further contends that the testimony was not admissible under Fed.Rules of Evid. 404(b) and 403 because the prejudicial effect of the testimony outweighed its probative value. A decision to admit deposition testimony, including testimony of appellant's prior bad act, is reviewed for an abuse of discretion. See United States v. Kirk, 844 F.2d 660, 663 (9th Cir.), cert. denied, 488 U.S. 890 (1988) (admissibility of hearsay); United States v. Sarault, 840 F.2d 1479, 1485 (9th Cir.1988) (admissibility of evidence under Rule 404(b)); United States v. Catabran, 836 F.2d 453, 456 (9th Cir.1988) (evidentiary rulings).
 
 A. Right to Cross-Examine
 
 13
 The court approved the taking of Siegel's deposition because he was dying, and the government provided evidence that Siegel's testimony was likely to be material. Fed.Rule of Crim.Proc. 15(e) permits the use of a deposition if the witness is no longer available to testify and the deposition is otherwise admissible under the Rules of Evidence. Fed.Rule of Evid. 804(b)(1) permits the use of a deposition if the witness is unavailable under the meaning of Rule 804(a), if the defendant had an opportunity and similar motive to develop the testimony during the deposition and if the deposition was otherwise taken in compliance with the law. Appellant does not challenge the necessity of Siegel's testimony to the government's case.
 
 
 14
 Appellant's complaint is that she was denied effective cross-examination because she was not timely provided with proper discovery materials, because she was unable to confer with her attorney before or during the deposition, and because her attorney had insufficient time to prepare for cross-examination.
 
 
 15
 The government maintains that it provided the necessary discovery materials two days before the deposition. Appellant claims her attorney did not receive the material until he arrived at the deposition. It is impossible to determine when exactly the attorney received the materials. It is not, however, a decisive point, particularly given the standard of review. There was a necessity for taking the deposition quickly. Appellant's counsel did get the discovery materials, at least at the deposition, which lasted three days. If necessary, counsel could have prepared on the evenings between the three days.
 
 
 16
 Appellant's claim that she did not have an opportunity to confer with counsel before or during the deposition is not persuasive because she waived her right to appear at the deposition. Although given notice and tendered expenses to attend, she chose not to appear. She cannot now claim that her own decision resulted in a denial of her rights.
 
 
 17
 Finally, appellant claimed her attorney had inadequate time to prepare for the deposition. He had two days. Additionally, he had the evenings between the three days of the deposition. This does not seem unreasonable. In Furlow v. United States, the district court set a deposition date and appointed counsel for the defendant with only four days notice. In that case like this one, the attorney not only had to prepare for the deposition, but also had to familiarize himself with the case as a whole. The Ninth Circuit said the time provided was sufficient. Furlow, 644 F.2d 764 (9th Cir.1981). Perhaps her attorney's cross-examination was not everything appellant had hoped, particularly after she was convicted; nevertheless, we find that appellant does not have sufficient evidence to show that the district court abused its discretion in admitting the evidence. Her confrontation clause right guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original).[2]
 
 
 18
 Even if her claim of ineffective cross-examination was persuasive, we would still find no error in the admission of the deposition. The attorneys of the other defendants did cross-examine Siegel effectively, and the deposition possessed several indicia of reliability.[3] In Barker v. Morris, 761 F.2d 1396 (9th Cir.1985), cert. denied, 474 U.S. 1063 (1986), the Ninth Circuit said that cross-examination is not always required. Barker, 761 F.2d at 1400-01. The test is "whether the interests of those who were represented during cross-examination were advanced in a manner that was consistent with the interest of the defendant who lacked such representation." Barker, 761 F.2d at 1402-03. The cross-examination by the other defendants' counsel was sufficient to satisfy this test.
 
 
 19
 B. Admissibility of Deposition Under Other Evidentiary Rules
 
 
 20
 Appellant urged this court to find the deposition was not admissible under Federal Rules of Evidence 404(b) and 403. Rule 404(b) provides for the admission of evidence of other crimes and bad acts to show such things as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The rule prohibits the use of such evidence merely to show bad character. The Ninth Circuit has interpreted the rule as one of inclusion. Health v. Cast, 813 F.2d 254, 259 (9th Cir.), cert. denied, 484 U.S. 849 (1987). Such evidence is admissible except when used only to prove criminal disposition. United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991).
 
 
 21
 The Ninth Circuit has applied a four part test to determine if evidence is admissible under Rule 404(b): 1) there must be sufficient evidence for the jury to find that defendant did commit the act; 2) the act must be introduced to prove a material issue; 3) the other acts must not be too remote in time; and, 4) if the purpose is to show intent, the other act must be similar to the offense charged. Ayers, 924 F.2d at 1473.
 
 
 22
 The first part of the test has a low threshold. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1991).[4] Siegel testified specifically that he saw Homick weigh out the cocaine, place it in the package and then give it to Shmyr. A judge could reasonably find that a jury could believe that Siegel was telling the truth about Shmyr possessing the cocaine.
 
 
 23
 Second, the act was necessary to prove a material element of the case against Shmyr--that she had the necessary knowledge and intent to be involved in the conspiracy.
 
 
 24
 Third, although it is true that the act in question occurred in 1983, six years before the deposition, it occurred close in time to the alleged conspiracy.
 
 
 25
 Finally, this act was admitted in part to show intent. The act of receiving and possessing cocaine from Homick is sufficiently similar to involvement in a conspiracy to distribute cocaine with Homick, among others, to satisfy the fourth part of the test. We find that the judge did not abuse his discretion in finding the evidence admissible under Rule 404(b).
 
 
 26
 Appellant claims that even if the evidence otherwise would be admissible under Rule 404(b), it should be excluded under Rule 403 because its prejudicial effect outweighs its probative value. As discussed above, the probative value of the testimony was significant. It was necessary to show knowledge and intent, critical to the conspiracy charge. Because the only substantive evidence the government had against Shmyr was the monitored phone conversations, a statement by agent Blankenbuehler and the testimony of Kolbe, Siegel's testimony was extremely probative. And it was not unfairly prejudicial. Evidence is unfairly prejudicial "if it has an undue tendency to suggest a decision on an improper basis such as emotion or character rather then evidence presented on the crime charged." United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir.1991) (citing Fed.R.Evid. 403, advisory committee's note; Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir.1980); and United States v. Medina, 755 F.2d 1269, 1274 (7th Cir.1985)). The 1983 incident seems unlikely to motivate a jury to convict of conspiracy improperly. On its own, the incident proves nothing more than that a brother gave cocaine to a sister, who may or may not have known what is in the package. The incident only takes on significance if the jury believes Siegel and finds the government's other evidence persuasive. The trial judge did not abuse his discretion in finding that the probative value of the evidence was not substantially outweighed by its potential prejudicial effect.
 
 II. Insufficiency of the Evidence Claim
 
 27
 Appellant's second major contention is an insufficiency of the evidence claim. She alleged that the government failed to prove one conspiracy. Instead, she claimed that there were two conspiracies, and that she was part of one conspiracy, but not the other. Alternatively, she argued that there was insufficient evidence to show she was involved in the conspiracy at all. According to her version of the facts, William Homick was part of both conspiracies. Because she was forced to be tried with him, the evidence of the second conspiracy was unfairly imputed to her and she was improperly convicted of involvement in one conspiracy, comprising all the activities of William Homick and the other conspirators.
 
 
 28
 Insufficiency of the evidence claims are reviewed by giving great deference to the decision of the trial court. Evidence is sufficient to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Adler, 879 F.2d 491, 495 (9th Cir.1989) (emphasis in original) (citation omitted). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Hernandez, 876 F.2d 774, 780 (9th Cir.1989), cert. denied, 493 U.S. 863 (1989).
 
 
 29
 Shmyr did not dispute that the government had proved there was a conspiracy, so the question is how many conspiracies were established and was her involvement established.
 
 
 30
 The Ninth Circuit has established a factor test for determining whether a single or multiple conspiracies exist. The factors to be considered are the nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's involvement in the alleged transactions and the commonality of time and goals. A reasonable jury could have found one conspiracy in this case because the same key players were involved in all the major activities, the method of operation was generally the same, the major activities of the conspiracy all took place within a relatively short period, two years, and there was a single goal of making money from the sale of illegal drugs, primarily cocaine.
 
 
 31
 A reasonable jury could also conclude the Shmyr was involved in this conspiracy. To connect her, the government needed only to prove a "slight connection" beyond a reasonable doubt. United States v. Sanchez-Mata, 925 F.2d 1166, 1167 (9th Cir.1991) "Circumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred...." United States v. Stauffer, 922 F.2d 508, 514 (9th Cir.1990) (citation omitted). From the 1983 incident the jury could infer Shmyr's knowledge of the conspiracy and her intent to be involved in it. Likewise her acting as an intermediary between her brother and Kolbe in the sale of cocaine could support the jury's conclusion that she was actively involved in the conspiracy. The jury could conclude from her participation in the sale to Kolbe and her alleged arrangement of another sale to Kolbe that interstate mail was being used. From this, the jury could find that she knew or should have known of the scope of the conspiracy. We find that there was sufficient evidence to support the jury's finding of one conspiracy in which Shmyr was involved.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Hon. James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The first distribution of cocaine may have been earlier than 1984
 
 
 [2]
 In any case, we're not certain that her cross-examination was actually deficient. Appellant's counsel succeeded in establishing that Siegel was biased against Shmyr and that his recollection of the circumstances surrounding Shmyr's possession of cocaine in 1983 was dim
 
 
 [3]
 The indicia of reliability test set forth by the Ninth Circuit in Barker is "whether the factors surrounding the making of the out-of-court statement, taken as a whole, indicate trustworthiness." d. at 1403. In this case, such factors include that Siegel knew he was dying, he was under oath, he was subject to cross-examination, and the jury could see his demeanor on videotape
 
 
 [4]
 In Houser, there was sufficient proof that a prior crime had occurred when a person involved in the transaction testified as to its occurring