76 F.3d 385
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ronald John DUPARD, Plaintiff-Appellant,
v.
P.R. KRINGLE, Deputy U.S. Marshal; Thomas P. Spillane,
Deputy U.S. Marshal, Defendants-Appellees.
 No. 92-35195.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1995.
Decided Feb. 9, 1996.
 
 Before: WRIGHT, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 Ronald J. Dupard appeals from a judgment entered on a verdict in favor of defendants, United States Deputy Marshals Paul R. Kringle, Jr., and Thomas D. Spillane, Jr., in Dupard's Bivens action against them.[1] Dupard argues that the district court made several erroneous rulings prior to and during his trial that resulted in substantial prejudice. Although most of the rulings at issue are either not erroneous or are harmless, the admission of testimony regarding the defendants' work records and Dupard's character require reversal. Moreover, the district court gave a misleading jury instruction regarding qualified immunity.
 
 II.
 
 3
 On October 30, 1987, Dupard was scheduled to be transferred from the Pierce County Jail in Tacoma, Washington, to an out-of-state federal prison. Nothing in the record indicates that federal marshals Kringle and Spillane, who prepared Dupard and other prisoners for the transfer, knew of Dupard's general reputation for aggressiveness or litigiousness on the day they prepared him for transfer. The parties agree that while the marshals were shackling Dupard for transfer, Dupard insisted that he had a right to have his legal papers transported with him. Dupard alleges that as this dispute became heated, Kringle punched him severely in the stomach while Spillane held him. The marshals contended that Dupard was rocking back and forth on his feet, making it difficult to shackle him, and so each marshal grabbed Dupard by an arm, backed him up against a wall, and told him to stop his behavior. At that point, say the marshals, they finished shackling him. The parties agree that the Marshals Service shipped Dupard's legal materials to his attorney that day.
 
 
 4
 In January 1988, Dupard brought this Bivens action pro se against two unidentified United States Marshals and the United States Marshals Service seeking compensatory and punitive damages. Dupard submitted a set of interrogatories to the defendants. Five months later, defendants still had not responded to Dupard's interrogatories, and so the magistrate judge presiding over the case issued an Order to Compel Answers to Interrogatories which was later affirmed by the district court. The magistrate judge did not impose sanctions on the defendants.
 
 
 5
 The defense still resisted answering Dupard's interrogatories and revealing the identities of the two marshals. Finally, in response to an Order to Show Cause, the defense revealed that the marshals were Kringle and Spillane. Dupard was allowed to amend his complaint to name the two marshals as defendants. The marshals answered Dupard's interrogatories, but Dupard moved for the sanction of default judgment on the ground that the answers were inadequate. The magistrate judge denied this motion.
 
 
 6
 On October 23, 1991, Dupard moved for leave to amend the complaint to add two new claims against the marshals, one for denial of due process and one for interference with access to courts. Soon afterwards, Dupard moved to amend his complaint to add a claim against defendants for conspiring to retaliate against him. The district court denied all three of these motions on futility, insufficient evidence, and other grounds.
 
 
 7
 On January 15, 1992, the jury trial commenced, with counsel having been appointed for Dupard. During the trial, the district judge made a number of evidentiary rulings that Dupard challenges. The district judge did not allow Dupard to admit into evidence U.S. Marshals Service Guidelines. The district judge also excluded the Pierce County Jail Logbook, and refused to allow Dupard to testify or elicit testimony regarding the County Jail's video recording system. In addition, the district judge admitted testimony as to the marshals' work histories and testimony regarding Dupard's reputation for aggressiveness and litigiousness.
 
 
 8
 At the end of the trial, the district judge allowed an instruction to which Dupard objected to go to the jury. The instruction read:
 
 
 9
 If either defendant reasonably believed that he was using a reasonable amount of force which was necessary to gain control over the plaintiff in order to place him in restraints in preparation for transportation, and acted on the basis of this belief, then his reasonable belief on that basis would constitute a defense to plaintiff's claim of unlawful use of force, even though the amount of force used might have been more than actually necessary.
 
 
 10
 In addition, the district judge refused to give Dupard's proposed instruction regarding punitive damages. We address each of Dupard's claims below.
 
 III.
 A. Sanctions for Discovery Violations
 
 11
 We review the denial of sanctions for an abuse of discretion. Henry v. Gill Indus., Inc., 983 F.2d 943, 946 (9th Cir.1993). There was no abuse here. The first request for sanctions was denied because the defendants had not violated a court order. The second request was for default judgment, an extreme sanction that was within the district court's discretion to deny.
 
 B. Refusal to Allow Amendments to Complaint
 
 12
 We affirm the district judge's refusal to allow Dupard to amend his complaint to add claims for violations of his rights to due process and access to the courts, and his claim that the marshals and Dupard's parole officer conspired to retaliate against Dupard.
 
 1. Due Process Claim
 
 13
 Dupard's due process claim lacked merit. The U.S. Marshals Service regulation at issue merely provides that "legal materials may be transported with the prisoner." (Emphasis added). Moreover, the Supreme Court recently held that, under the Fourteenth Amendment, the due process liberty interests created by state prison regulations are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995). This regulation does not qualify.
 
 2. Conspiracy to Retaliate Claim
 
 14
 We affirm the district court's denial of Dupard's motion to amend the complaint to add a claim for conspiracy to retaliate. Dupard made an insufficient evidentiary showing to require the district court to permit the amendment. Whatever the reason behind Dupard's parole officer's delaying Dupard's recommended release time, Dupard made no showing that Spillane and Kringle conspired with the parole officer.
 
 3. Interference with Access to Courts Claim
 
 15
 Finally, we affirm the district court's denial of Dupard's motion to add a claim for unconstitutional interference with his access to the courts. Dupard presented no authority supporting the proposition that a prisoner is denied access to the courts if the prisoner's legal materials are shipped to the prisoner's attorney when the prisoner is transferred. See United States v. Robinson, 913 F.2d 712, 717-18 (9th Cir.1990), cert. denied, 498 U.S. 1104 (1991) (incarcerated defendant who is represented by counsel has no constitutional right of access to legal materials, and incarcerated defendant who proceeds pro se is not denied his right of access to courts because access to his legal materials is tailored to the perceived needs of prison management); Vigliotto v. Terry, 873 F.2d 1201, 1202-03 (9th Cir.1989) (prisoner's right of access to courts was not denied where prison officials confiscated his material for three days and then gave it to person of prisoner's choosing).
 
 C. Evidentiary Rulings
 
 16
 We review the district court's evidentiary rulings for abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir.1994). We will only reverse a district court's nonconstitutional erroneous evidentiary ruling if it more likely than not affected the verdict. United States v. Corona, 34 F.3d 876, 882 (9th Cir.1994). Applying these standards, we conclude that we must reverse and remand for a new trial because the district court erred in admitting testimony regarding the marshals' work records and Dupard's aggressive and litigious character. Not only was it error to admit such testimony, but the error probably affected the verdict.
 
 
 17
 1. Admission of Testimony Regarding Marshals' Work Histories
 
 
 18
 The district court erred in allowing the marshals to testify that no complaints of using excessive force against a prisoner had ever been lodged against them.
 
 
 19
 Generally, evidence of a person's character can not be introduced to prove that the person acted in conformity therewith on a given occasion. Fed.R.Evid. 404(a). The only relevance of testimony that the marshals had never had excessive force complaints filed against them was as proof that, in the instance at issue, they did not use excessive force against Dupard. Therefore, under Fed.R.Evid. 404(a), this testimony should not have been admitted.
 
 
 20
 The defense argues that the testimony falls within an exception provided by Rule 404(a)(1). Rule 404(a)(1), which permits character evidence offered by an "accused," does not apply to defendants in civil cases. While some circuits allow in such evidence when a civil rights defendant is accused of quasi-criminal conduct,[2] we do not. See Gates v. Rivera, 993 F.2d 697, 700 (9th Cir.1993) (in civil rights case, police officer defendant who shot a suspect should not have been allowed to testify that in his sixteen and one-half years as a police officer, he had not shot anyone). Thus, Rule 404(a)(1) does not provide an exception that makes testimony regarding the marshals' work records admissible.
 
 
 21
 The defense also argues that the testimony was admissible under Rule 404(a)(3). Rule 404(a)(3) allows for the admission of evidence of a witness' character as provided by Rules 607, 608, and 609. The defense argues that the testimony regarding the marshals' character falls within Rule 607 because it was used to impeach Dupard's testimony that the marshals acted in a rehearsed manner when they punched him. The marshals have not cited a case, however, in which such an attenuated "contradiction"--that the marshals' spotless records "contradict" Dupard's testimony that it seemed to him as though the marshals' actions were rehearsed--was held to be admissible under Rule 607. We conclude that admission of the evidence was error. We cannot say that it is unlikely that the jury's verdict in favor of the marshals was not substantially influenced by the jury's knowledge that the marshals had never had excessive force complaints lodged against them. Therefore, we must reverse the judgment and remand for a new trial.
 
 
 22
 2. Admission of Evidence of Regarding Dupard's Character
 
 
 23
 The district court also erred in allowing the government to elicit testimony regarding incidents in which Dupard behaved aggressively in the prison and testimony regarding other lawsuits Dupard brought against prison and law enforcement officials.[3] When Dupard sought an order in limine prohibiting the introduction of this evidence, the district judge denied the order, stating that the defense was entitled to
 
 
 24
 bring out who the plaintiff is, including his personality ... or his proclivities for arguments or aggressiveness, jailhouse lawyer, anything else that would indicate to them who they're dealing with.
 
 
 25
 During trial, the defense questioned Dupard about a case he brought against a law enforcement officer, accusations he had made against various law enforcement and prison officials, fights he had gotten into with other inmates, and a jail "incident report" suggesting that he might be "strong-arming" the unit.
 
 
 26
 The only purpose this evidence served was to prove that Dupard was behaving aggressively on the day in question, and that he only sued the marshals because he had a propensity for filing lawsuits against prison officials. Evidence regarding Dupard's general aggressiveness and litigiousness is precisely the type of character evidence admitted to prove propensity that is prohibited by Rule 404. See, e.g., Heath v. Cast, 813 F.2d 254, 259 (9th Cir.) (Rule 404(b) prohibits the admission of testimony regarding a civil rights plaintiff's other crimes or bad acts where such evidence is probative only of a criminal disposition), cert. denied, 484 U.S. 849 (1987).
 
 
 27
 The defense argues that admission of testimony regarding Dupard's "assaultive nature in the Jail" and "pattern of grievances against officials in the criminal justice system" was admissible under Rules 404(a)(3), 404(b) and 406. We reject that contention. Rule 404(a)(3) permits admission of evidence regarding a witness' character as allowed by Rules 607-609, but the defense has not demonstrated that Dupard's aggressiveness and litigiousness falls within one of these rules. This general information about Dupard did not pertain to his character for truthfulness, nor did it impeach anything about which he testified. Compare Cohn v. Papke, 655 F.2d 191, 193 (9th Cir.1981) (where civil rights plaintiff did not deny he was bisexual, it was improper for the government to elicit testimony that he was bisexual).[4]
 
 
 28
 Rule 404(b) allows the admission of evidence of other acts to prove a person's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The government has not demonstrated that evidence of Dupard's general aggressiveness or litigiousness is probative of any of these issues in the case at hand. Evidence regarding other acts is also admissible as an impeachment tool under Rule 404(b), United States v. Gay, 967 F.2d 322, 328 (9th Cir.), cert. denied, 113 S.Ct. 359 (1992), but again there is no showing that evidence at issue impeached or how that evidence pertained to Dupard's character for truthfulness.
 
 
 29
 Rule 406 permits the admission of evidence of a person's habit if it is relevant to prove that a person's conduct on a particular occasion was in conformity therewith. However, "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Simplex, Inc. v. Diversified Energy Systems, Inc., 847 F.2d 1290, 1293 (7th Cir.1988). No such evidence of habit exists in this record.
 
 
 30
 The defense next argues that evidence of Dupard's aggressiveness was admissible as evidence of a pertinent trait of the victim under Rule 404(a)(2). However, if the marshals are not "defendants" under Rule 404(a)(1), then Dupard is not a "victim" of crime under Rule 404(a)(2).
 
 
 31
 Finally, the defense argues that evidence of Dupard's aggressive and litigious nature explained the marshals' reaction to Dupard on the day in question. This argument lacks merit. Neither of the marshals testified that they knew of Dupard's reputation for aggressive behavior in the jail or propensity for filing lawsuits at the time of the incident.
 
 
 32
 Thus the only purpose served by this evidence was to show that it was within Dupard's character to behave aggressively and to file a lawsuit, and therefore to support the defense's claim that Dupard was the aggressor in this particular instance and that his lawsuit was frivolous. This use of character evidence is impermissible under Rule 404. Cohn, 655 F.2d at 193. It is more probable than not that the jurors' knowledge of Dupard's aggressiveness and propensity for filing lawsuits against prison officials materially affected the verdict. The credibility of Dupard's version of the encounter was crucial to his case. The judge never gave a limiting instruction as to the testimony regarding Dupard's character, and the government referred to it extensively in its closing. But cf. United States v. Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir.1993) (erroneous admission of prior arrests unlikely to have materially affected verdict because judge gave limiting instruction and arrests were mentioned only in police officer's testimony). The error is cause for reversal.
 
 3. Remaining Evidentiary Rulings
 
 33
 All of Dupard's other challenges to the district court's evidentiary rulings lack merit. The district court did not abuse its discretion in determining that the Guidelines were more prejudicial than probative under Fed.R.Evid. 403. The probative value of the Guidelines was not great in that their content is not probative of whether Dupard was punched.
 
 
 34
 The district court did not abuse its discretion in denying admission of the jail log book. The jury heard testimony from a Pierce County Jail official that no entry regarding the incident was made in the Pierce County Jail Logbook. The log book itself, showing no entry, would have been cumulative.
 
 
 35
 Nor did the district court err in refusing to allow Dupard to elicit testimony regarding the Pierce County Jail's Video Monitoring Service. The defense made a showing that there was no videotape of the incident because the video camera at issue did not have recording capacity on the day that Dupard was transferred. If the video camera did not record videotape at the time the incident occurred, then the absence of a videotape is not probative of the credibility of the marshals' account. Dupard never made an offer of proof describing what testimony he wanted to elicit by asking questions about the lack of a videotape of the incident. There was no abuse of discretion.
 
 D. Jury Instructions
 
 36
 Dupard argues that the district court erred in instructing the jury that:
 
 
 37
 If either defendant reasonably believed that he was using a reasonable amount of force which was necessary to gain control over the plaintiff in order to place him in restraints in preparation for transportation, and acted on the basis of this belief, then his reasonable belief on that basis would constitute a defense to plaintiff's claim of unlawful use of force, even though the amount of force used might have been more than actually necessary.
 
 
 38
 According to Dupard, this "qualified immunity" instruction: (1) should not have been given because qualified immunity was not an issue; and (2) misstates the law on qualified immunity by suggesting that the defendants' subjective state of mind is relevant.[5] We review jury instructions to ensure that they are formulated to fairly and adequately cover the issues presented, correctly state the law, and not mislead the jury. Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992).
 
 
 39
 The district court did not err by instructing the jury on qualified immunity. Although ordinarily the question of qualified immunity should not be decided by the jury, here the marshals' qualified immunity turned on the resolution of disputed facts concerning " 'what the officer and claimant did or failed to do,' " and thus a qualified immunity instruction was appropriate. See Sloman v. Tadlock, 21 F.3d 1462, 1467-68 (9th Cir.1994) (quoting Act Up!/ Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993)).
 
 
 40
 This particular "qualified immunity" instruction, however, was misleading. The instruction wrongly focuses on whether the "defendant[s] reasonably believed that" they were using a reasonable amount of force. The relevant inquiry is whether a reasonable marshal in the defendant's position could have believed his actions were lawful. See id. at 1467. We need not decide whether the district court's error in giving this instruction was harmless because we are reversing and remanding for a new trial for independent reasons.
 
 
 41
 Dupard also assigns error to the district court's refusal to instruct the jury on punitive damages. The jury could have assessed punitive damages in this case if the marshals' conduct was shown to be motivated by an evil motive or intent, or if the conduct involved a reckless or callous indifference to Dupard's federally protected rights. Smith v. Wade, 461 U.S. 30, 56 (1983). Dupard did introduce evidence--his testimony--to support his claim that the marshals acted with an evil intent. In light of this evidentiary basis, a punitive damages instruction should be given if Dupard introduces such evidence during the next trial. See Smith v. Sumner, 994 F.2d 1401, 1404 (9th Cir.1993) ("[a] party is entitled to an instruction on his theory of the case provided that it accurately states the law and is supported by the evidence").
 
 
 42
 The judgment of the district court is reversed and the case is remanded for a new trial.[6]
 
 
 43
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Dupard is ably represented on this appeal by Mr. Peter B. Camp, appointed pursuant to this court's appellate pro bono program; we thank Mr. Camp for his services
 
 
 [2]
 See Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir.1986); Carson v. Polley, 689 F.2d 562, 575 (5th Cir.1982)
 
 
 [3]
 Evidence regarding Dupard's felony convictions was admissible under Rule 404(a)(3) and 609 as evidence attacking his credibility as a witness
 
 
 [4]
 We also note that the Second Circuit has twice held that evidence of a civil rights plaintiff's litigiousness is more prejudicial than probative under Rule 403. Outley v. City of New York, 837 F.2d 587, 591-95 (2d Cir.1988); Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 40 (2d Cir.1985), cert. denied, 475 U.S. 1027 (1986)
 
 
 [5]
 The defense now argues that the instruction was not a qualified immunity instruction, but an instruction on marshals' the good faith defense to Dupard's Eighth Amendment claim. There can be no doubt, however, that the instruction was intended as a qualified immunity instruction. After Dupard took exception to it, the government defended the instruction as a qualified immunity instruction, citing Harlow v. Fitzgerald, 457 U.S. 800 (1982), a leading "qualified" or "good faith" immunity case
 
 
 [6]
 We hold that Dupard's contention that the district judge should have recused himself lacks merit. In light of the district judge's statements regarding the relevance of Dupard's character, however, we conclude that the appearance of impartiality would be better served by retrial before a different district judge. See Smith v. Mulvaney, 827 F.2d 558, 562-63 (9th Cir.1987) (reassignment appropriate where original judge would reasonably be expected to have difficulty putting previously-expressed views out of his or her mind on remand). The chief judge of the district is requested to make such an assignment